**IN THE UNITED STATES DISTRICT COURT,**
**NORTHERN DISTRICT OF ILLINOIS,**
**EASTERN DIVISION**

| | |
|---|---|
| **MICHAEL DAVIS,** ) | |
| ) | |
|    **Plaintiff,** ) | **JURY TRIAL DEMANDED** |
| ) | |
| **vs.** ) | |
| ) | |
| **Stateville prison guard WESAM S. ALI,** ) | |
| **ILLINOIS DEPARTMENT of** ) | |
| **CORRECTIONS (IDOC), Nurse "MARY",** ) | |
| **and** ) | |
| **WEXFORD HEALTH SOURCES** ) | |
| **INC.,** ) | |
| ) | |
|    **Defendants.** ) | |

**COMPLAINT**

Plaintiff MICHAEL DAVIS, by and through his attorney Melinda Power, brings this

complaint against Defendants WESAM S. ALI, a guard at Stateville Correctional Center, the

ILLINOIS DEPARTMENT OF CORRECTIONS (IDOC), Nurse "MARY" and WEXFORD

HEALTH SOURCES INC. and in support of his Complaint states:

**INTRODUCTION**

As Plaintiff Michael Davis entered the dining room at Stateville Correctional Center on

September 2, 2014, Defendant Wesam Ali began to yell at Plaintiff without justification.

Plaintiff complied with Defendant Ali's orders, yet Defendant Ali approached and yelled at

Plaintiff.  A staff member handcuffed Plaintiff, and Defendant Ali took Plaintiff out of the dining

room.  Once out of view of other prisoners and guards, Defendant Ali severely yanked Plaintiff's

handcuffed wrists up towards Plaintiff's head.  Plaintiff heard and felt his left wrist snap.  As a

result of Defendant Ali's unjustified use of force, Plaintiff suffered and continues to suffer extreme pain to his left wrist.

Despite recommendations from medical personnel that Plaintiff needed surgery for his left wrist, it took the Illinois Department of Corrections and Wexford over two years to provide Plaintiff the medical care he needed for his left wrist. During the delay, medical staff, including Nurse "Mary" were deliberately indifferent to his medical needs. Due to the delay in receiving surgery, Plaintiff has ongoing pain and a permanent injury to his left wrist.

## JURISDICTION AND VENUE

1.     This is an action brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the Eighth and Fourteenth Amendments to the United States Constitution.

2.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the claims asserted in this complaint occurred in this judicial district.

## PARTIES

3.     On September 2, 2014, Plaintiff Michael Davis was incarcerated at Stateville Correctional Center ("Stateville") in Joliet, Illinois. Stateville is operated by the Illinois Department of Corrections ("IDOC"). Plaintiff is a citizen of the State of Illinois.

4.     At all relevant times, Defendant Ali was a guard at Stateville. He is the guard who intentionally and knowingly caused Plaintiff severe and ongoing medical injury. He is sued in his individual capacity.

5.     Defendant Wexford Health Sources ("Wexford") is, and at all times relevant to this lawsuit was, under contract to the State of Illinois and engaged in the business of providing

health care professionals and services to correctional facilities in Illinois, including Stateville. Wexford failed to provide the proper medical care to the Plaintiff.

6.      Defendant Nurse "Mary" was at all relevant times working as a nurse at Stateville Correctional Center and was employed by the Defendant, Wexford, and acting within the scope of her employment and under color of law.

7.      Defendant Illinois Department of Corrections ("IDOC") is, and at all times relevant to this lawsuit was, a government agency in charge of the administration of all of Illinois state prisons, including Stateville.

## FACTUAL ALLEGATIONS

8.      On September 2, 2014, Plaintiff entered the "Chow Hall Circle" in Cell house F at Stateville.

9.      As he entered the Chow Hall, he spoke to two inmates, one of whom was on the other side of the gate from where Plaintiff was standing.

10.      Without justification or provocation, Defendant Ali told Plaintiff to "get the fuck off the gate".

11.      Despite the fact that Plaintiff complied with this unjust order, Defendant Ali continued to shout at Plaintiff to get off the gate.

12.      Plaintiff continued to comply and attempted to continue into the Chow Hall to eat.

13.      Defendant Ali approached Plaintiff in an aggressive and confrontational manner.

14.      One of the inmates with whom Plaintiff had been speaking questioned Defendant Ali regarding his actions towards Plaintiff.

15.      Defendant Ali became annoyed and stated "I do what the fuck I want to do".

3

16.     When other officers approached Plaintiff and Defendant Ali, Plaintiff put up his hands and said he wasn't doing anything.

17.     Despite the fact that Plaintiff had complied with Defendant Ali's unjust order, Defendant Ali again approached Plaintiff and Plaintiff continued to keep his hands up in the air to show that he was complying with the Defendant.

18.     Cameras in the Chow Hall were turned towards the Plaintiff and recorded the incident.

19.     Correctional Lt. Daniel Artl approached Plaintiff and handcuffed him in an unobjectionable manner.

20.     When out of sight of the cameras, prisoners and other guards, Defendant Ali then unnecessarily grabbed Plaintiff by the handcuffs and violently pulled the handcuffs up and away from Plaintiff's back, causing Plaintiff to suffer pain.

21.     Plaintiff said "I'm not doing shit".

22.     Defendant Ali then took Plaintiff through a door into a separate dining area and forcefully pushed Plaintiff up against a door.

23.     Defendant Ali then put his arms behind the Plaintiff, pulled Plaintiff's handcuffs and pushed Plaintiff against the wall.

24.     When Defendant Ali did that, Plaintiff heard his left wrist made a loud popping sound and experienced a lot of pain in the area of his left wrist.

25.     Defendant Ali then roughly took Plaintiff into "the tunnel".

26.     Plaintiff told Defendant Ali that he had broken Plaintiff's arm.

27.     Defendant Ali said "shut up or it will get worse".

4

28.     Defendant Ali then pushed Plaintiff into the tunnel wall and Plaintiff felt another snap of his left arm area due to Defendant Ali's actions.

29.     Defendant Ali did not take Plaintiff to get medical treatment.

30.     Another guard took Plaintiff to the infirmary at Stateville on September 2, 2014. On September 2, 2014, a nurse referred Plaintiff to a doctor due to the swelling and pain that Plaintiff was experiencing.

31.     On September 2, 2014, Plaintiff was given inadequate treatment by medical staff at Stateville, who applied a splint, told him to apply ice packs, and gave him medicine for his pain.

32.     On September 3, 2014, staff at the infirmary saw Plaintiff and gave him Motrin for his pain and noted he should have follow-up with the doctor next week and "potid" in two weeks.

33.     On September 5, 2013, a doctor from orthopedics at the University of Illinois at Chicago (UIC) agreed to see Plaintiff on September 10, 2014.

34.     On September 10, 2014, the doctor did not see Plaintiff due to a lockdown at Stateville.  Medical staff made a note regarding consultation with UIC regarding the injury.

35.     On September 12, September 19 and September 23, 2014, medical staff did not see Plaintiff despite the fact he had appointments, due to a lockdown at Stateville.

36.      On October 6, 2014, a doctor saw Plaintiff and diagnosed Plaintiff with a wrist dislocation and a torn ligament, gave Plaintiff Tylenol and recommended surgery.

37.     On November 5, 2014, a nurse at Stateville saw Plaintiff.  The nurse noted that Plaintiff stated that he was in pain and that Plaintiff was to go to UIC for medical treatment of

the left wrist. Plaintiff was given Motrin for thirty days.  Medical Director Obais noted that

Plaintiff had a possible TFCC tear.

38.     On November 11, 2014, the doctor approved medical treatment for a torn

ligament.

39.     On November 17, 2014, medical staff at Stateville, who noted that UIC had

recommended surgery, saw Plaintiff.

40.     On December 18, 2014, medical staff at Stateville noted that Plaintiff had

"permit hand treatment through 112/2015 L wrist support".

41.     On January 4, 2015, medical staff at Stateville noted that they did not see Plaintiff

due to a lockdown at Stateville.

42.     On January 9 and January 12, 2015, medical staff at Stateville saw Plaintiff.

43.     In February 2015, Plaintiff returned from surgery at UIC and stated to medical

staff at Stateville that he sometimes has sharp pains in his left wrist.   Results from the MRI were

pending.

44.     On February 23, 2015, medical staff at Stateville, who had not yet received a

report from UIC, saw Plaintiff and  scheduled a follow-up visit for four weeks.

45.      On March 10, 2015, a doctor at Stateville noted that orthopedic doctor was

approved for a "wrist disorder".

46.     On March 24, 2015, medical staff at Stateville noted that the MRI results were not

available and the visit was rescheduled for two weeks.

47.      On April 8, 2015, Plaintiff wasn't seen due to time "constraints".

48.     On April 15, 2015, Plaintiff wasn't seen due to a lockdown.

6

49.     On April 29, 2015, a nurse noted that Plaintiff said "I'm all right I guess". Surgery was scheduled for June 24, 2015. However, an entry later that day noted that Plaintiff was not seen due to a lockdown and the appointment was rescheduled for May 13, 2015.

50.     On May 4, 2015, medical staff at Stateville saw Plaintiff to schedule an appointment.

51.     On May 11, 2015, medical staff at Stateville noted that Plaintiff had no change regarding his left wrist.

52.     On May 13, 2015, medical staff did not see Plaintiff due to time constraints.

53.     On May 14, 2015, medical staff did not see Plaintiff.

54.     On June 2, 2015, Plaintiff told medical staff that he had pain in his left wrist. Medical staff at Stateville told Plaintiff he would have surgery at UIC in a few weeks.

55.     On July 1, 2015, Plaintiff told medical staff that his wrist hurt a lot.

56.     On July 21, 2015, Plaintiff had no change in his wrist, which still hurt a lot.

57.     On August 10, 2015, medical staff saw Plaintiff, who asked when he would get the surgery.  Surgery was rescheduled.

58.     On August 25, 2015, Plaintiff was returned to inmate housing.

59.     On September 8, 2015, Plaintiff asked a nurse at Stateville when he would receive surgery and told the nurse that the pain medication was not working.

60.     On September 17, 2015, Plaintiff was not seen due to "CQI" and his appointment was rescheduled for September 24, 2015.

61.     On September 24, 2015, the medical director did not see Plaintiff and instead rescheduled his appointment for September 25, 2015.

62.    On September 25 and September 29, 2015, Plaintiff was not seen due to the absence of a provider.

63.    On October 2, 2015, due to Plaintiff's pain, a doctor was asked to see him but did not due to "time constraints".

64.    On October 5, 2015, Plaintiff asked medical staff if the surgery was still pending or if it had been actually scheduled.

65.    On October 9, 2015, medical staff did not see Plaintiff due to a lockdown.

66.    On October 13, 2015, Plaintiff was seen for a scheduled MRI.

67.    On October 18, 2015, Plaintiff asked medical staff at Stateville what was happening with his surgery. Plaintiff's left wrist was in an ace bandage for pain and tenderness. Surgery had not yet been scheduled.

68.    On October 27, 2015 a writ for the Plaintiff to get surgery at UIC was approved.

69.    On November 15, 2015, Plaintiff's appointment was rescheduled since he was on the yard.

70.    On November 16, 2015, Plaintiff asked medical staff when he would go for surgery. Medical staff told him it would happen soon.

71.    On November 10, 2016, UIC admitted Plaintiff for surgery.

72.    Plaintiff received surgery on his left wrist that same day for arthroscopy open TFCC repair.

73.    On December 9, 2016, Plaintiff was in extreme pain while in his cell in Stateville.

74.    Plaintiff asked the attending nurse, Nurse "Mary" for help due to the extreme pain.

75.     In violation of her duty, Defendant "Mary" told Plaintiff that she couldn't do anything until the medical director returned and further suggested that Plaintiff remove the hard cast and stitches to relieve the pain.

76.     Defendant "Mary" also told Plaintiff that the only medicine she could give him was generic Tylenol.

77.     Plaintiff relied Defendant Mary's advice, removed the cast and stitches, and took the Tylenol.

78.     Later, Defendant "Mary" returned to the cell with another nurse present and asked Plaintiff why he took his cast off.

79.     Plaintiff replied that it was because she told him to.

80.     Defendant "Mary" said she was joking and refused to give him any medication for the pain.

81.     The Wexford staff, including Defendant "Mary", did not ensure that Plaintiff got the proper and needed medical care for his injury.

82.     The surgery did not repair the injury.

83.     Plaintiff continued to suffer pain and needed additional surgery.

84.     False disciplinary charges were brought against Plaintiff to cover up Defendant Ali's actions.  Plaintiff's grievance about the charge was denied.

85.     Plaintiff was found guilty of the disciplinary charge and he received a three month c grade, segregation and commissary restriction.

86.     At all relevant times, the Defendants actions were willful and wanton.

**PLAINTIFF'S DAMAGES**

9

87.     Plaintiff has suffered serious injury as a direct and proximate result of the misconduct of the Defendants alleged in the preceding paragraphs.  Because Defendant Ali unjustifiably and intentionally used excessive force against the Plaintiff, he has suffered and continues to suffer ongoing injury, pain and suffering.  Defendants failed to provide Plaintiff proper and needed medical treatment, which led to the aggravation of his injury.

88.     Even, after repeated requests over a number of years, rather than receiving proper medical care and accommodations, Plaintiff was ignored and forced to live in pain and agony.

89.     As a result of the Defendants' wrongful actions, Plaintiff has suffered and continues to suffer physical pain and suffering.

90.     Subsequent to these events, Plaintiff exhausted any and all administrative remedies by IDOC, and then filed this lawsuit.

## COUNT I

**Defendant Ali Deliberately and Intentionally used Excessive Force against Plaintiff in Violation of the Eighth Amendment under 42 U.S.C. §1983**

91.     Plaintiff realleges paragraphs 1-90 with the same force and effect as if fully set forth herein.

92.     The actions and conduct of Defendant Officer Ali, as set forth above, in using a greater amount of force than reasonably necessary on Plaintiff under color of law constitutes excessive force which violated Plaintiff's Eighth Amendment rights and the same Defendant Officer should be held liable for doing so pursuant to 42 U.S.C. § 1983.

10

93.     Defendant Ali's use of force was not a good faith effort to maintain or restore security or discipline but rather was a malicious and sadistic act intended specifically to cause harm to Plaintiff.

94.     Defendant Ali deprived Plaintiff of his right to be free from cruel and unusual punishment, or recklessly and callously disregarded Plaintiff's rights.

95.     Plaintiff suffered pain, injuries, mental and emotional distress and needed medical attention as a result of Defendant Ali's actions and needed.

96.     The actions and conduct of Defendant Officer Ali, as set forth above, were the direct and proximate cause of the violations of Plaintiff's Eighth Amendment rights and caused the damages as set forth above.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff demands actual or compensatory damages plus the costs of this action and attorney fees from the Defendant Officer; in addition, Plaintiff demands punitive damages against the Defendant Officer as this individual Defendant acted willfully, wantonly and/or in reckless disregard of Plaintiff's rights; and, whatever additional relief this Honorable Court deems just equitable and just.

## COUNT 11

### Failure to Provide Adequate Medical Care in Violation of the Eighth Amendment under 42 U.S.C. §1983

97.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

98.     Defendants were and are aware that that Plaintiff suffered from a serious medical injury as a result of Defendant Ali's actions, aggravated by the Defendants failure to provide adequate medical treatment.

11

99.     Defendants failed to ensure that he got prompt and adequate medical attention, including surgery.

100.    Defendant IDOC failed to ensure that Plaintiff got prompt and needed medical treatment when Plaintiff was denied visits to health care due to lockdown, being on the yard or time constraints.

101.    Because the Defendants were not only aware of the Plaintiff's medical needs, but also the necessary treatment and medical accommodations that could relieve his suffering, yet refused to administer them to the Plaintiff, the Defendants exhibited and continue to exhibit deliberate indifference to the medical needs of the Plaintiff.

102.    As a direct and proximate result of the Defendants' failure to provide adequate medical care to the Plaintiff, Plaintiff was and continues to be unlawfully subjected to an unreasonable risk of serious harm and has suffered damages.

WHEREFORE, Plaintiff respectfully requests that this court:

A.      Declare the conduct of Defendants has violated the rights guaranteed to Plaintiff Davis under the Eighth Amendment to the U.S. Constitution.

B.      Grant an order forcing Defendants at IDOC to allow Plaintiff any and all needed future medical attention for his wrist in order to ensure that he receives proper medical care, including surgery and the use of a splint if necessary.

C.      Award Plaintiff appropriate compensatory damages, as well as costs and attorneys fees incurred in connection to this lawsuit pursuant to 42 U.S.C. § 1988.

## COUNT II
## 42 U.S.C. § 1983 *Monell* Claim

103.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

104.    In its capacity as a contractor to the IDOC, Wexford promulgated rules, regulations, policies and procedures for medical screening, medical treatment, and overall medical care for inmates at Stateville.

105.    Wexford's employees, including Defendant Nurse "Mary", implemented its policies, as the people responsible for the medical care of Plaintiff.

106.    In its capacity as a contractor to the State of Illinois, through the IDOC, Wexford was at all relevant times acting under color of law.

107.    Upon information or belief, Defendant Wexford has implemented a cost cutting policy that resulted in its failure to ensure that its patients receive the medical care needed to resolve their injuries such as occurred to the Plaintiff and those with similar medical needs.

108.    Upon information or belief, Wexford has other polices and/or procedures in place that resulted in its failure to ensure that Plaintiff and other prisoners with similar medical needs received the needed and recommended medical care.

109.    In 2011 and for a period of time prior to that date, Wexford maintained a policy or procedure under which prisoners with serious medical conditions, such as Plaintiff, were routinely denied access to proper or sufficient medication and medical care.

110.    Wexford's policy and procedure were clearly demonstrated by the failure and refusal of its employees to ensure that Plaintiff got prompt, proper and sufficient medical care for his serious injury.

111.    Defendant Wexford was aware of the medical needs of patients with wrist injuries and is aware that their policies or procedures result in the denial of medically prescribed treatment to the plaintiff and those with similar medical needs.

112.    Pursuant to their polices and procedures, Defendant Wexford, continued to refuse, deny or fail to ensure that Plaintiff received the medically prescribed treatment needed by the Plaintiff, which resulted in deliberate indifference to the Plaintiff's serious medical needs in violation of the Eighth Amendment of the U.S. Constitution.

113.    As a direct and proximate result of Defendant Wexford's polices and procedures that prevented Plaintiff from receiving needed surgery, Plaintiff was and continues to be unlawfully subjected to an unreasonable risk of serious harm and has suffered damages.

WHEREFORE, Plaintiff Davis respectfully requests that this court:

A.    Declare that the conduct of Wexford violated the rights guaranteed to Plaintiff Davis under the Eighth Amendment to the U.S. Constitution.

B.    Award Plaintiff appropriate compensatory damages as well as costs and attorneys fees incurred in connection to this lawsuit pursuant to 42 U.S.C. § 1988.

## COUNT 111

**Indemnification Pursuant to 745 ILCS 10/9-102 against the Illinois Department of Corrections**

114.    Plaintiff realleges paragraphs 1-113 with the same force and effect as if fully set forth herein.

115.    IDOC is the employer of Defendant Ali.

116.    The above Defendant committed the acts alleged above under color of law and in the scope of his employment as employee of the Illinois Department of Corrections.

WHEREFORE, Plaintiff, pursuant to 745 ILCS 10/9-102, demands judgment against IDOC in the compensatory and actual amount awarded to Plaintiff against Defendant Ali as well as attorney fees, costs and interest obtained thereon; in addition, for whatever additional relief this Honorable Court deems equitable and just.

**JURY DEMAND**

Plaintiff demands trial by jury.

Respectfully submitted,

/s/Melinda Power
West Town Law Office
2502 W. Division
Chicago, Il. 60622
773-278-670
melindapower1@gmail.com