042575/19344/MHW/MEL

# UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

MICHAEL DAVIS,

               Plaintiff,

v.

STATEVILLE PRISON GUARD WESAM S.
ALI, ILLINOIS DEPARTMENT OF
CORRECTIONS (IDOC), NURSE "MARY",
and WEXFORD HEALTH SOURCES, INC,

               Defendants.

No. 17-cv-3654

Judge Elaine E. Bucklo

Magistrate Judge M. David Weisman

## DEFENDANT WEXFORD'S ANSWER AND
## AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

Defendant, WEXFORD HEALTH SOURCES, INC. ("Wexford"), by and through its attorneys, Matthew H. Weller and Miguel E. Larios of CASSIDAY SCHADE LLP, pursuant to Fed. R. Civ. P. 8, and for its Answer and Affirmative Defenses to Plaintiff's Complaint, pleads as follows:

## INTRODUCTION

As Plaintiff Michael Davis entered the dining room at Stateville Correctional Center on September 2, 2014, Defendant Wesam Ali began to yell at Plaintiff without justification. Plaintiff complied with Defendant Ali's orders, yet Defendant Ali approached and yelled at Plaintiff. A staff member handcuffed Plaintiff, and Defendant Ali took Plaintiff out of the dining room. Once out of view of other prisoners and guards, Defendant Ali severely yanked Plaintiff's handcuffed wrists up towards Plaintiff's head. Plaintiff heard and felt his left wrist snap. As a result of Defendant Ali's unjustified use of force, Plaintiff suffered and continues to suffer extreme pain to his left wrist.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

Despite recommendations from medical personnel that Plaintiff needed surgery for his left wrist, it took the Illinois Department of Corrections and Wexford over two years to provide Plaintiff the medical care he needed for his left wrist. During the delay, medical staff, including Nurse "Mary" were deliberately indifferent to his medical needs. Due to the delay in receiving surgery, Plaintiff has ongoing pain and a permanent injury to his left wrist.

**ANSWER:     Wexford denies the allegations contained in this paragraph.**

**JURISDICTION AND VENUE**

1.     This is an action brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the Eighth and Fourteenth Amendments to the United States Constitution.

**ANSWER:     Wexford admits that this civil action is purportedly brought pursuant to 42 U.S.C. § 1983 for alleged deprivations of rights under the Eighth and Fourteenth Amendments to the United States Constitution, but denies that it is liable to Plaintiff for any reason whatsoever.**

2.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the claims asserted in this complaint occurred in this judicial district.

**ANSWER:     Wexford admits that this Court has subject matter jurisdiction to hear this cause. Wexford admits that venue is proper in the Northern District of Illinois.**

## PARTIES

3.      On September 2, 2014, Plaintiff Michael Davis was incarcerated at Stateville Correctional Center ("Stateville") in Joliet, Illinois. Stateville is operated by the Illinois Department of Corrections ("IDOC"). Plaintiff is a citizen of the State of Illinois.

**ANSWER:    Wexford admits that Stateville Correctional Center ("Stateville") is operated by the Illinois Department of Corrections ("IDOC"), but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 3.**

4.      At all relevant times, Defendant Ali was a guard at Stateville. He is the guard who intentionally and knowingly caused Plaintiff severe and ongoing medical injury. He is sued in his individual capacity.

**ANSWER:    Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 4.**

5.      Defendant Wexford Health Sources ("Wexford") is, and at all times relevant to this lawsuit was, under contract to the State of Illinois and engaged in the business of providing health care professionals and services to correctional facilities in Illinois, including Stateville. Wexford failed to provide the proper medical care to the Plaintiff.

**ANSWER:    Wexford lacks knowledge or information sufficient to form a belief about the phrase "at all times relevant to this lawsuit," but admits that it provides medical health services to certain IDOC facilities pursuant to a contract with the State of Illinois. Wexford denies the remaining allegations contained in paragraph 5.**

3

6.      Defendant Nurse "Mary" was at all relevant times working as a nurse at Stateville Correctional Center and was employed by the Defendant, Wexford, and acting within the scope of her employment and under color of law.

**ANSWER:      Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 6.**

7.      Defendant Illinois Department of Corrections ("IDOC") is, and at all times relevant to this lawsuit was, a government agency in charge of the administration of all of Illinois state prisons, including Stateville.

**ANSWER:      Wexford lacks knowledge or information sufficient to form a belief about the phrase "at all times relevant to this lawsuit," but admits that the IDOC is a state agency in charge of administering Illinois state prisons, including Stateville.**

## FACTUAL ALLEGATIONS

8.      On September 2, 2014, Plaintiff entered the "Chow Hall Circle" in Cell house F at Stateville.

**ANSWER:      Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 8.**

9.      As he entered the Chow Hall, he spoke to two inmates, one of whom was on the other side of the gate from where Plaintiff was standing.

**ANSWER:      Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 9**

4

10.     Without justification or provocation, Defendant Ali told Plaintiff to "get the fuck off the gate".

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 10.**

11.     Despite the fact that Plaintiff complied with this unjust order, Defendant Ali continued to shout at Plaintiff to get off the gate.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 11.**

12.     Plaintiff continued to comply and attempted to continue into the Chow Hall to eat.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 12.**

13.     Defendant Ali approached Plaintiff in an aggressive and confrontational manner.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 13.**

14.     One of the inmates with whom Plaintiff had been speaking questioned Defendant Ali regarding his actions towards Plaintiff.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 14.**

15.     Defendant Ali became annoyed and stated "I do what the fuck I want to do".

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 15.**

16.     When other officers approached Plaintiff and Defendant Ali, Plaintiff put up his hands and said he wasn't doing anything.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 16.**

17.     Despite the fact that Plaintiff had complied with Defendant Ali's unjust order, Defendant Ali again approached Plaintiff and Plaintiff continued to keep his hands up in the air to show that he was complying with the Defendant.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 17.**

18.     Cameras in the Chow Hall were turned towards the Plaintiff and recorded the incident.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 18.**

19.     Correctional Lt. Daniel Artl approached Plaintiff and handcuffed him in an unobjectionable manner.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 19.**

20.     When out of sight of the cameras, prisoners and other guards, Defendant Ali then unnecessarily grabbed Plaintiff by the handcuffs and violently pulled the handcuffs up and away from Plaintiff's back, causing Plaintiff to suffer pain.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 20.**

21.     Plaintiff said "I'm not doing shit".

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 21.**

22.     Defendant Ali then took Plaintiff through a door into a separate dining area and forcefully pushed Plaintiff up against a door.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 22.**

23.     Defendant Ali then put his arms behind the Plaintiff, pulled Plaintiff's handcuffs and pushed Plaintiff against the wall.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 23.**

24.     When Defendant Ali did that, Plaintiff heard his left wrist made a loud popping sound and experienced a lot of pain in the area of his left wrist.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 24.**

25.     Defendant Ali then roughly took Plaintiff into "the tunnel".

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 25.**

26.     Plaintiff told Defendant Ali that he had broken Plaintiff's arm.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 26.**

27.    Defendant Ali said "shut up or it will get worse".

**ANSWER:    Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 27.**

28.    Defendant Ali then pushed Plaintiff into the tunnel wall and Plaintiff felt another snap of his left arm area due to Defendant Ali's actions.

**ANSWER:    Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 28.**

29.    Defendant Ali did not take Plaintiff to get medical treatment.

**ANSWER:    Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 29.**

30.    Another guard took Plaintiff to the infirmary at Stateville on September 2, 2014. On September 2, 2014, a nurse referred Plaintiff to a doctor due to the swelling and pain that Plaintiff was experiencing.

**ANSWER:    Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 30.**

31.    On September 2, 2014, Plaintiff was given inadequate treatment by medical staff at Stateville, who applied a splint, told him to apply ice packs, and gave him medicine for his pain.

**ANSWER:    Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 31.**

32.     On September 3, 2014, staff at the infirmary saw Plaintiff and gave him Motrin for his pain and noted he should have follow-up with the doctor next week and "potid" in two weeks.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 32.**

33.     On September 5, 2013, a doctor from orthopedics at the University of Illinois at Chicago (UIC) agreed to see Plaintiff on September 10, 2014.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 33.**

34.     On September 10, 2014, the doctor did not see Plaintiff due to a lockdown at Stateville. Medical staff made a note regarding consultation with UIC regarding the injury.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 34.**

35.     On September 12, September 19 and September 23, 2014, medical staff did not see Plaintiff despite the fact he had appointments, due to a lockdown at Stateville.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 35.**

36.     On October 6, 2014, a doctor saw Plaintiff and diagnosed Plaintiff with a wrist dislocation and a torn ligament, gave Plaintiff Tylenol and recommended surgery.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 36.**

37.     On November 5, 2014, a nurse at Stateville saw Plaintiff. The nurse noted that Plaintiff stated that he was in pain and that Plaintiff was to go to UIC for medical treatment of the left wrist. Plaintiff was given Motrin for thirty days. Medical Director Obais noted that Plaintiff had a possible TFCC tear.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 37.**

38.     On November 11, 2014, the doctor approved medical treatment for a torn ligament.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 38.**

39.     On November 17, 2014, medical staff at Stateville, who noted that UIC had recommended surgery, saw Plaintiff.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 39.**

40.     On December 18, 2014, medical staff at Stateville noted that Plaintiff had "permit hand treatment through 112/2015 L wrist support".

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 40.**

41.     On January 4, 2015, medical staff at Stateville noted that they did not see Plaintiff due to a lockdown at Stateville.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 41.**

42.     On January 9 and January 12, 2015, medical staff at Stateville saw Plaintiff.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 42.**

43.     In February 2015, Plaintiff returned from surgery at UIC and stated to medical staff at Stateville that he sometimes has sharp pains in his left wrist. Results from the MRI were pending.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 43.**

44.     On February 23, 2015, medical staff at Stateville, who had not yet received a report from UIC, saw Plaintiff and scheduled a follow-up visit for four weeks.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 44.**

45.     On March 10, 2015, a doctor at Stateville noted that orthopedic doctor was approved for a "wrist disorder".

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 45.**

46.     On March 24, 2015, medical staff at Stateville noted that the MRI results were not available and the visit was rescheduled for two weeks.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 46.**

47.     On April 8, 2015, Plaintiff wasn't seen due to time "constraints".

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 47.**

48.     On April 15, 2015, Plaintiff wasn't seen due to a lockdown.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 48.**

49.     On April 29, 2015, a nurse noted that Plaintiff said "I'm all right I guess". Surgery was scheduled for June 24, 2015. However, an entry later that day noted that Plaintiff was not seen due to a lockdown and the appointment was rescheduled for May 13, 2015.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 49.**

50.     On May 4, 2015, medical staff at Stateville saw Plaintiff to schedule an appointment.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 50.**

51.     On May 11, 2015, medical staff at Stateville noted that Plaintiff had no change regarding his left wrist.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 51.**

52.     On May 13, 2015, medical staff did not see Plaintiff due to time constraints.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 52.**

53.     On May 14, 2015, medical staff did not see Plaintiff.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 53.**

54.      On June 2, 2015, Plaintiff told medical staff that he had pain in his left wrist. Medical staff at Stateville told Plaintiff he would have surgery at UIC in a few weeks.

**ANSWER:      Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 54.**

55.      On July 1, 2015, Plaintiff told medical staff that his wrist hurt a lot.

**ANSWER:      Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 55.**

56.      On July 21, 2015, Plaintiff had no change in his wrist, which still hurt a lot.

**ANSWER:      Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 56.**

57.      On August 10, 2015, medical staff saw Plaintiff, who asked when he would get the surgery. Surgery was rescheduled.

**ANSWER:      Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 57.**

58.      On August 25, 2015, Plaintiff was returned to inmate housing.

**ANSWER:      Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 58.**

59.      On September 8, 2015, Plaintiff asked a nurse at Stateville when he would receive surgery and told the nurse that the pain medication was not working.

**ANSWER:      Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 59.**

60.     On September 17, 2015, Plaintiff was not seen due to "CQI" and his appointment was rescheduled for September 24, 2015.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 60.**

61.     On September 24, 2015, the medical director did not see Plaintiff and instead rescheduled his appointment for September 25, 2015.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 61.**

62.     On September 25 and September 29, 2015, Plaintiff was not seen due to the absence of a provider.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 62.**

63.     On October 2, 2015, due to Plaintiff's pain, a doctor was asked to see him but did not due to "time constraints".

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 63.**

64.     On October 5, 2015, Plaintiff asked medical staff if the surgery was still pending or if it had been actually scheduled.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 64.**

65.     On October 9, 2015, medical staff did not see Plaintiff due to a lockdown.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 65.**

66.     On October 13, 2015, Plaintiff was seen for a scheduled MRI.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 66.**

67.     On October 18, 2015, Plaintiff asked medical staff at Stateville what was happening with his surgery. Plaintiff's left wrist was in an ace bandage for pain and tenderness. Surgery had not yet been scheduled.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 67.**

68.     On October 27, 2015 a writ for the Plaintiff to get surgery at UIC was approved.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 68.**

69.     On November 15, 2015, Plaintiff's appointment was rescheduled since he was on the yard.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 69.**

70.     On November 16, 2015, Plaintiff asked medical staff when he would go for surgery. Medical staff told him it would happen soon.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 70.**

71.     On November 10, 2016, UIC admitted Plaintiff for surgery.

**ANSWER:     Wexford admits the allegations contained in paragraph 71.**

72.     Plaintiff received surgery on his left wrist that same day for arthroscopy open TFCC repair.

**ANSWER:     Wexford admits that on November 10, 2016, Plaintiff received surgery on his left wrist for arthroscopy, open TFCC repair, ECU tendon sheath reconstruction and ulnar nerve decompression at Guyon's canal.**

73.     On December 9, 2016, Plaintiff was in extreme pain while in his cell in Stateville.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 73.**

74.     Plaintiff asked the attending nurse, Nurse "Mary" for help due to the extreme pain.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 74.**

75.     In violation of her duty, Defendant "Mary" told Plaintiff that she couldn't do anything until the medical director returned and further suggested that Plaintiff remove the hard cast and stitches to relieve the pain.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 75.**

76.     Defendant "Mary" also told Plaintiff that the only medicine she could give him was generic Tylenol.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 76.**

77.     Plaintiff relied Defendant Mary's advice, removed the cast and stitches, and took the Tylenol.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 77.**

78.     Later, Defendant "Mary" returned to the cell with another nurse present and asked Plaintiff why he took his cast off.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 78.**

79.     Plaintiff replied that it was because she told him to.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 79.**

80.     Defendant "Mary" said she was joking and refused to give him any medication for the pain.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 80.**

81.     The Wexford staff, including Defendant "Mary", did not ensure that Plaintiff got the proper and needed medical care for his injury.

**ANSWER:     Wexford denies the allegations contained in paragraph 81.**

82.     The surgery did not repair the injury.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 82.**

83.     Plaintiff continued to suffer pain and needed additional surgery.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 83.**

84.     False disciplinary charges were brought against Plaintiff to cover up Defendant Ali's actions. Plaintiff's grievance about the charge was denied.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 84.**

85.     Plaintiff was found guilty of the disciplinary charge and he received a three month c grade, segregation and commissary restriction.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 85.**

86.     At all relevant times, the Defendants actions were willful and wanton.

**ANSWER:     Wexford denies the allegations contained in paragraph 86.**

### PLAINTIFF'S DAMAGES

87.     Plaintiff has suffered serious injury as a direct and proximate result of the misconduct of the Defendants alleged in the preceding paragraphs. Because Defendant Ali unjustifiably and intentionally used excessive force against the Plaintiff, he has suffered and continues to suffer ongoing injury, pain and suffering. Defendants failed to provide Plaintiff proper and needed medical treatment, which led to the aggravation of his injury.

**ANSWER:     Wexford denies the allegations contained in paragraph 87.**

88.     Even, after repeated requests over a number of years, rather than receiving proper medical care and accommodations, Plaintiff was ignored and forced to live in pain and agony.

**ANSWER:     Wexford denies the allegations contained in paragraph 88.**

89.     As a result of the Defendants' wrongful actions, Plaintiff has suffered and continues to suffer physical pain and suffering.

**ANSWER:     Wexford denies the allegations contained in paragraph 89.**

90.     Subsequent to these events, Plaintiff exhausted any and all administrative remedies by IDOC, and then filed this lawsuit.

**ANSWER:     Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 90.**

## COUNT I

**Defendant Ali Deliberately and Intentionally used Excessive Force against Plaintiff in Violation of the Eighth Amendment under 42 U.S.C. §1983**

Wexford makes no answer to the allegations of Count I because there are no allegations asserted against it. To the extent the allegations of Count I can be construed as pertaining to it, Wexford denies those allegations.

## COUNT II

**Failure to Provide Adequate Medical Care in Violation of the Eighth Amendment under 42 U.S.C. §1983**

97.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

**ANSWER:     Wexford re-alleges and restates their responses to paragraph 1 through 90, as if fully set forth herein.**

98.     Defendants were and are aware that that Plaintiff suffered from a serious medical injury as a result of Defendant Ali's actions, aggravated by the Defendants failure to provide adequate medical treatment.

**ANSWER:     Wexford denies the allegations contained in paragraph 98.**

99.     Defendants failed to ensure that he got prompt and adequate medical attention, including surgery.

**ANSWER:     Wexford denies the allegations contained in paragraph 99.**

100.    Defendant IDOC failed to ensure that Plaintiff got prompt and needed medical treatment when Plaintiff was denied visits to health care due to lockdown, being on the yard or time constraints.

**ANSWER:     Wexford denies the allegations contained in paragraph 100.**

101.    Because the Defendants were not only aware of the Plaintiff's medical needs, but also the necessary treatment and medical accommodations that could relieve his suffering, yet refused to administer them to the Plaintiff, the Defendants exhibited and continue to exhibit deliberate indifference to the medical needs of the Plaintiff.

**ANSWER:     Wexford denies the allegations contained in paragraph 101.**

102.    As a direct and proximate result of the Defendants' failure to provide adequate medical care to the Plaintiff, Plaintiff was and continues to be unlawfully subjected to an unreasonable risk of serious harm and has suffered damages.

**ANSWER:     Wexford denies the allegations contained in paragraph 102.**

## COUNT III

### 42 U.S.C. § 1983 *Monell* Claim

103.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

**ANSWER:     Wexford re-alleges and restates their responses to paragraph 1 through 102, as if fully set forth herein.**

20

104.    In its capacity as a contractor to the IDOC, Wexford promulgated rules, regulations, policies and procedures for medical screening, medical treatment, and overall medical care for inmates at Stateville.

**ANSWER:    Wexford admits the allegations contained in paragraph 104.**

105.    Wexford's employees, including Defendant Nurse "Mary", implemented its policies, as the people responsible for the medical care of Plaintiff.

**ANSWER:    Wexford lacks knowledge or information sufficient to form a belief about the truth of the identity of Defendant Nurse "Mary," but denies the allegations contained in paragraph 105.**

106.    In its capacity as a contractor to the State of Illinois, through the IDOC, Wexford was at all relevant times acting under color of law.

**ANSWER:    Wexford lacks knowledge or information sufficient to form a belief about the truth of the phrase "at all relevant times," and therefore denies paragraph 106.**

107.    Upon information or belief, Defendant Wexford has implemented a cost cutting policy that resulted in its failure to ensure that its patients receive the medical care needed to resolve their injuries such as occurred to the Plaintiff and those with similar medical needs.

**ANSWER:    Wexford denies the allegations contained in paragraph 107.**

108.    Upon information or belief, Wexford has other polices and/or procedures in place that resulted in its failure to ensure that Plaintiff and other prisoners with similar medical needs received the needed and recommended medical care.

**ANSWER:    Wexford denies the allegations contained in paragraph 108.**

109.    In 2011 and for a period of time prior to that date, Wexford maintained a policy or procedure under which prisoners with serious medical conditions, such as Plaintiff, were routinely denied access to proper or sufficient medication and medical care.

**ANSWER:    Wexford denies the allegations contained in paragraph 109.**

110.    Wexford's policy and procedure were clearly demonstrated by the failure and refusal of its employees to ensure that Plaintiff got prompt, proper and sufficient medical care for his serious injury.

**ANSWER:    Wexford denies the allegations contained in paragraph 110.**

111. Defendant Wexford was aware of the medical needs of patients with wrist injuries and is aware that their policies or procedures result in the denial of medically prescribed treatment to the plaintiff and those with similar medical needs.

**ANSWER:    Wexford denies the allegations contained in paragraph 111.**

112. Pursuant to their polices and procedures, Defendant Wexford, continued to refuse, deny or fail to ensure that Plaintiff received the medically prescribed treatment needed by the Plaintiff, which resulted in deliberate indifference to the Plaintiff's serious medical needs in violation of the Eighth Amendment of the U.S. Constitution.

**ANSWER:    Wexford denies the allegations contained in paragraph 112.**

113. As a direct and proximate result of Defendant Wexford's polices and procedures that prevented Plaintiff from receiving needed surgery, Plaintiff was and continues to be unlawfully subjected to an unreasonable risk of serious harm and has suffered damages.

**ANSWER:    Wexford denies the allegations contained in paragraph 113.**

## <u>COUNT IV</u>

**Indemnification Pursuant to 745 ILCS 10/9-102 against the Illinois Department of Corrections**

Wexford makes no answer to the allegations of Count IV because there are no allegations asserted against it. To the extent the allegations of Count IV can be construed as pertaining to it, Wexford denies those allegations.

WHEREFORE, Defendant, WEXFORD HEALTH SOURCES, INC., denies that Plaintiff is entitled to any relief whatsoever, and prays for judgment in its favor and against Plaintiff, with costs.

**AFFIRMATIVE DEFENSES**

Defendant, WEXFORD HEALTH SOURCES, INC., by and through its attorneys, Matthew H. Weller and Miguel E. Larios of CASSIDAY SCHADE LLP, pursuant to Fed. R. Civ. P. 8, and for their Affirmative Defenses to Plaintiff's Complaint, hereby plead as follows:

**FIRST AFFIRMATIVE DEFENSE**
**FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

1.      Federal law mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a); *Pavey*, 544 F.3d at 740.

2.      The administrative remedies applicable to the Plaintiff in the instant action can be found at 20 ILL. ADMIN. CODE § 504.800 - 870. Effectively, this Plaintiff was required to complete three administrative steps in order to exhaust his remedies:

> (1) attempt to resolve his complaint informally through his/her Counselor;
>
> (2) file a written grievance to the Grievance Officer within 60 days of discovery of his complaint; and
>
> (3) file an appeal to the Director within 30 days after the date of the decision with respect to his written grievance. *See* 20 ILL. ADMIN. CODE § 504.810, § 504.850.

3.      To the extent Plaintiff has failed to exhaust his administrative remedies prior to the filing of this suit, his claims are barred by 42 U.S.C. § 1997(e)(a) and 20 ILL. ADMIN. CODE § 504.800 - 870.

## SECOND AFFIRMATIVE DEFENSE
## FAILURE TO EXERCISE REASONABLE CARE AND TO MITIGATE DAMAGES

1.      The sole proximate cause of the injuries and damages alleged by the Plaintiff was the Plaintiff's failure to exercise reasonable care for his own well-being.

2.      Plaintiff has failed to mitigate damages as required by law.

## THIRD AFFIRMATIVE DEFENSE
## DEFENDANTS ACTED IN GOOD FAITH/IMMUNITY

1.      At all times relevant herein, Defendant(s) acted in good faith in the performance of their official duties and without violating Plaintiff's statutory or constitutional rights of which a reasonable person would have known. Therefore, the doctrine of qualified immunity protects these Defendant(s) from this lawsuit. "Qualified immunity shields [officials] from civil damages liability so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Leaf v. Shelnutt*, 400 F.3d 1070, 1079-80 (7th Cir. 2005) (citing *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987)).

2.      The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

3.      The United States Supreme Court regards as beneficial, the two-step sequence for resolving government officials' immunity claims articulated in *Saucier v. Katz*, 533 U.S. 194 (2001); *see also Pearson*, 555 U.S. at 236 ("Although we now hold that the *Saucier* protocol should not be regarded as mandatory in all cases, we continue to recognize that it is often beneficial…"). First, a court must decide whether the facts, as alleged by the plaintiff, make out a violation of a constitutional right. *Id.* at 232. Second, the court must decide whether the right at

25

issue was "clearly established" at the time of the defendant's alleged misconduct. *Id*. In order to show that the right was clearly established, the plaintiff must show that the defendant's "violation [of the constitutional right] was so clear that an official would realize he or she was violating an inmate's constitutional rights." *Borello v. Allison*, 446 F.3d 742, 750 (7th Cir. 2006).

4.    Plaintiff's Complaint alleges that Defendant(s) provided medical care and treatment to the Plaintiff while he was incarcerated at a state-run prison. At no time did any defendant render medical care that was so clearly a violation of the Plaintiff's constitutional rights that the defendant would realize he or she was providing medical care tantamount to cruel and unusual punishment. Thus, the doctrine of qualified immunity applies and shields these Defendant(s) from this litigation.

5.    Defendant(s) further recognize that the Seventh Circuit has suggested, in *dicta*, that qualified immunity is not available to private medical personnel in state-run prisons. *See Petties v. Carter*, 836 F.3d 722, 733-34 (7th Cir. 2016) (en banc). However, the United States Supreme Court's decision in *Filarsky v. Delia*, 566 U.S. 377, 390 (2012) controls and establishes that immunity is available to a government's private contractors who are performing jobs that, otherwise, would be performed by state agents, who unquestionably could assert qualified immunity.

6.    In *Filarsky*, the Supreme Court, unanimously, held that a private attorney hired by a municipality to perform a task was entitled to claim qualified immunity. 566 U.S. at 390 ("Affording immunity not only to public employees but also to others acting on behalf of the government similarly serves to ensure that talented candidates are not deterred by the threat of damages suits from entering public service") (internal marks omitted).

7.    Other Circuits follow *Filarsky* and apply qualified immunity to private medical providers working in state-run prisons. In a decision handed down after *Petties*, the Tenth Circuit Court of Appeals found that *Filarsky* controlled and applied qualified immunity to a private doctor working in a state prison. *Estate of Lockett v. Fallin*, 841 F.3d 1098, 1108-09 (10th Cir. 2016) ("Dr. Doe stands in the same position as the attorney in *Filarsky* – he was a private party hired to do a job for which a permanent government employee would have received qualified immunity. Thus, we conclude that qualified immunity applies to Dr. Doe.").

8.    The Supreme Court's decision in *Filarsky* combined with the case law of other Courts of Appeal establish that qualified immunity applies to private medical providers performing medical services in a state-run prison. Therefore, Defendant(s) have a non-frivolous argument for extending, modifying, or reversing existing law in this Circuit.

### FOURTH AFFIRMATIVE DEFENSE
### CLAIMS BARRED BY STATUTE OF LIMITATIONS AND/OR STATUTE OF REPOSE

1.    Claims for deliberate indifference made pursuant to 42 U.S.C. § 1983 are considered personal injury claims and are governed by the personal injury statute of limitations and tolling laws in the state where the alleged injury occurred. *Delgado-Brunet v. Clark*. 93 F.3d 339, 342 (7th Cir. 1996).

2.    Illinois has a two-year statute of limitations for personal injury actions. 735 ILCS 5/13–202 (2008); *Anton v. Lehpamer,* 787 F.2d 1141, 1142 (7th Cir. 1986). Illinois has a four-year statute of repose for personal injury actions. 735 ILCS 5/13-212(a); *see also Phillips v. Cook County*, 07 C 2394, 2008 U.S. Dist. LEXIS 50600 (N.D. Ill. July 1, 2008) (Gottschall, J.).

3.    Plaintiff's claims in this matter are based on personal injuries he allegedly suffered as an inmate in the custody of the Illinois Department of Corrections. As such, the

Plaintiff's claims are subject to a two-year statute of limitations and/or a four-year statute of repose.

4.      Although state law determines the length of the statute of limitations, federal law determines when that statute of limitations begins to accrue. *Wilson v. Giesen,* 956 F.2d 738, 740 (7th Cir. 1991). Federal law dictates that accrual begins when a "plaintiff knows or should know that his or her constitutional rights have been violated." *Id.*

5.      To the extent Plaintiff complains of injuries or events that occurred more than two years prior to the filing of this suit, his claims are barred by 735 ILCS 5/13-202. To the extent Plaintiff complains of injuries or events that occurred more than four years prior to the filing of this suit, his claims are barred by 735 ILCS 5/13-212.


WHEREFORE, Defendant, WEXFORD HEALTH SOURCES, INC., denies that Plaintiff is entitled to any relief whatsoever, either in law or in equity, and prays for judgment in its favor and against Plaintiff, with costs.

## JURY DEMAND

Defendant demands a trial by jury on all issues herein triable.


Dated: October 27, 2017                    Respectfully submitted,

                                           CASSIDAY SCHADE LLP

                                           By: */s/ Miguel E. Larios*_____
                                               One of the Attorneys for Defendant,
                                               WEXFORD HEALTH SOURCES, INC.,


Matthew H. Weller (ARDC No. 6278685)
Miguel E. Larios (ARDC No. 6301828)
CASSIDAY SCHADE LLP
20 North Wacker Drive, Suite 1000
Chicago, IL 60606
(312) 641-3100
(312) 444-1669 – fax
mweller@cassiday.com
mlarios@cassiday.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 27, 2017, I electronically filed the foregoing document with the clerk of the court for Northern District of Illinois, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

*/s/ Miguel E. Larios*
